# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and PETER ANDREYEV,<br><br>*Plaintiffs*,<br><br>v.<br><br>SPOKEO, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>*Defendants*. | Civil Action No. 1:24-cv-4299-HB<br><br>**AMENDED NOTICE OF REMOVAL**<br><br>Removed from:<br><br>Superior Court of New Jersey<br>Law Division, Morris County<br>Docket No. MRS-L-000227-24 |

**PLEASE TAKE NOTICE THAT** Defendant Spokeo Inc. ("Spokeo"), by and through its undersigned counsel, hereby files this Amended Notice of Removal to remove the above-captioned case from the Superior Court of New Jersey, Law Division, Morris County, to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1441(a) and 1446, on the grounds that federal jurisdiction exists under 28 U.S.C. § 1332(d)(2)(A), 28 U.S.C. § 1332(d)(11), and 28 U.S.C. § 1332(a).

Pursuant to Rule 10.1(a) of the Local Civil Rules, the addresses of the named parties are as follows:

- Defendant Spokeo is a Delaware corporation and its principal place of business is located at 199 S Los Robles Avenue, Suite 711, Pasadena, CA 91101.

- Defendants Richard Roes 1-10 and ABC Companies 1-10 are fictitious names of unknown natural persons and entities. Spokeo is not aware of the "street[s] and post office

- address[es]" of Richard Roes 1-10 or the principal places of business of ABC Companies 1-10. *See* Local Civ. R. 10.1(a).

- Plaintiff Atlas Data Privacy Corporation ("Atlas") is a Delaware corporation. Atlas did not disclose the location of its principal place of business in the complaint. Spokeo is not otherwise aware of the location of Atlas's principal place of business. But for the reasons discussed below, the Court should disregard Atlas' place of incorporation and principal place of business in determining jurisdiction over this action.

- Plaintiffs Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and Peter Andreyev (collectively, the "Individual Plaintiffs") are natural persons. The Individual Plaintiffs did not disclose the "street[s] and post office address[es]" of any of the Individual Plaintiffs in the complaint. Local Civ. R. 10.1(a). Spokeo is not otherwise aware of the street and post office addresses of any of the Individual Plaintiffs.

- Plaintiffs are represented by Rajiv D. Parikh, Esq. and Kathleen Barnett Einhorn, Esq. of PEM Law LLP, 1 Boland Dr. Suite 101, West Orange, NJ 07052, John A. Yanchunis, Esq. of Morgan & Morgan, 201 N. Franklin St., 7th Floor, Tampa, FL 33602 and Mark Mao, Esq. of Boies Schiller Flexner LLP, 44 Montgomery St., 41st Floor, San Francisco, CA 94104.

**I.   BACKGROUND**

1.   On February 6, 2024, Atlas and the Individual Plaintiffs (collectively, the "Plaintiffs") filed this action, captioned *Atlas Data Privacy Corporation, et al. v. Spokeo, Inc., et al.*, in the Superior Court of New Jersey, Law Division, Morris County, Docket No. MRS-L-000227-24. A true and correct copy of Plaintiffs' summons, complaint, and the notice of service received by Spokeo are attached hereto as Exhibits 1, 2, and 3, respectively.

2.   Spokeo was served on February 26, 2024. *See* Ex. 3.[1]

3.   Plaintiffs bring claims against Spokeo alleging violations of New Jersey's Daniel's Law, N.J. Stat. Ann. § 56:8-166.1 *et seq.* Ex. 2 (Compl.) ¶¶ 56-62. Daniel's Law prohibits any "person, business, or association" from disclosing the home address or unpublished telephone

---

[1]   Plaintiffs also named fictitious individuals and companies as defendants. Fictitious defendants are disregarded when assessing a notice of removal. *See, e.g.*, *Dozier v. E. Mfg. Corp.*, No. 19-cv-21378, 2020 WL 3068191, at *1 (D.N.J. June 8, 2020).

number of any "covered person," including current and former judges, law enforcement officers, prosecutors, and their eligible family members, upon 10 days' notice from any such covered person. *Id.* ¶¶ 8, 49.

4. A plaintiff that successfully proves a violation of Daniel's Law is entitled to "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act[.]" N.J. Stat. Ann. § 56:8-166.1(c)(1). Plaintiffs seek injunctive relief, "actual damages, not less than liquidated damages under Daniel's Law," punitive damages, and attorney's fees. Compl., Prayer for Relief. Atlas purports to assert claims as an assignee on behalf of 18,882 "covered persons." Accordingly, Atlas and the seven Individual Plaintiffs collectively seek damages in an amount that they allege exceeds $18,889,000.

5. Spokeo has not yet filed an answer or responsive pleading to the complaint in the Superior Court of New Jersey.

6. Spokeo has great respect for America's law enforcement officers, prosecutors, and judges, and takes very seriously its obligation to comply with Daniel's Law and honor legitimate requests to remove personally identifying information from its website. Indeed, Spokeo opts out of its database any person—including judicial officers, prosecutors, and law enforcement personnel—upon request and has done so for years, long before states began enacting laws requiring such opt-outs, such as New Jersey Senate Bill 332, which will take effect January 15, 2025. Spokeo also has reached out proactively to state court administrators in each of the United States, alerting judicial officers and their staff to Spokeo's opt-out mechanisms.

7. But Atlas did not (and still has not) taken advantage of Spokeo's opt-out services. Rather, from December 21 to December 23, 2023, Spokeo received approximately 55,972 takedown requests from Atlas-affiliated accounts. On information and belief, the requests were

made by Atlas on behalf of alleged "covered persons" under Daniel's Law. The vast majority of these demands were impossible to honor for numerous reasons, most notably: The sheer volume of the demands overwhelmed Spokeo's systems, at a time (the Christmas and New Year's holidays) when many engineers were away from work; and the requests lacked essential information needed to verify their legitimacy and confirm covered persons' identities. Spokeo nevertheless responded to each notice and also contacted Atlas Legal (through an email address on Atlas' website), explaining these deficiencies, requesting information necessary to identify the corresponding user profiles, and offering up Spokeo's opt-out services.

8.  Instead of responding, Atlas filed this lawsuit on February 6, 2024. These facts make clear that Atlas's focus was not to get covered persons the protection to which they are entitled under Daniel's Law, but rather to set up a lawsuit in an effort to recover nearly $20 million in statutory damages.

9.  Spokeo is not Atlas's only target. During a 10-day period in February, Atlas filed more than 144 such lawsuits seeking statutory damages totaling almost $2.7 billion.

10. In this action, Atlas purports to assert claims on behalf of approximately 18,882 covered persons under Daniel's Law who allegedly assigned their claims against Spokeo to Atlas. Compl. ¶ 25. However, federal courts routinely disregard assignments where (as here) the assignments were purposefully made to avoid federal jurisdiction. When the assignments to Atlas are disregarded, then Atlas is no longer a proper party—and the only way the claims of the 18,882 purported assignors can be advanced is to construe the complaint either as a "class action" or "mass action," as defined by the Class Action Fairness Act ("CAFA"). Federal jurisdiction therefore is proper under CAFA. Alternatively, once Atlas is disregarded, only the claims of the Individual Plaintiffs would remain and the Court has diversity jurisdiction over this action because there is

4

complete diversity between Spokeo and the Individual Plaintiffs and the amount in controversy is more than $75,000.

11.     By filing this Amended Notice of Removal, Spokeo does not waive, and expressly preserves, any and all of Spokeo's available rights, arguments, defenses, or objections, including those relating to personal jurisdiction.

## II.    THE COURT SHOULD DISREGARD THE ASSIGNMENTS WHEN ASSESSING SUBJECT MATTER JURISDICTION

12.     Federal courts have the authority to "protect their own jurisdiction." *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990). That authority includes the power to examine whether an assignment was an "improper or collusive" attempt to frustrate federal court jurisdiction. *Att'ys Tr. v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 595 (9th Cir. 1996); *see Grassi*, 894 F.2d at 185. If an assignment was improperly or collusively made for the purpose of avoiding federal jurisdiction, then the Court should disregard the assignment when assessing its subject matter jurisdiction. *Att'ys Tr.*, 93 F.3d at 595; *Grassi*, 894 F.2d at 185.

13.     To determine whether an assignee-plaintiff impermissibly attempted to defeat federal jurisdiction through assignment, courts look to the following factors: whether (1) the motive for the assignment was to stay in state court; (2) the assignee had any interest in the litigation before the assignment; (3) the assignment was made shortly before the suit was filed; (4) the assignment was partial or complete; and (5) the assignee paid consideration to the assignor. *JMTR Enters., LLC v. Duchin*, 42 F. Supp. 2d 87, 92 (D. Mass. 1999) (citing *Grassi*, 894 F.2d at 186); *see, e.g.*, *NPD Mgmt. & Bldg. Servs., Inc. v. Geismar N. Am., Inc.*, No. 20-cv-2739, 2021 WL 5231870, at *4 (E.D. La. Nov. 10, 2021); *Picquet v. Amoco Prod. Co.*, 513 F. Supp. 938, 943 (M.D. La. 1981).

14.     ***Motive.***  On information and belief, Atlas orchestrated the 18,882 assignments in this case in order to avoid litigating in federal court.  That conclusion is evidenced by the fact that, within 10 days in February 2024, it filed *144 Daniel's Law lawsuits* in its capacity as assignee under many thousands of assignments.  Each of these cases was filed in the Superior Court of New Jersey.² The allegations and claims in these cases are substantially identical to the allegations and claims in this case.  And on information and belief, but for the alleged assignments, most if not all of those lawsuits would also have been filed as class actions, and therefore would have been removable to federal court under CAFA.

15.     In addition, on January 12, 2024, mere weeks before it filed these lawsuits in New Jersey state court, Atlas registered to do business in New Jersey—a prerequisite for bringing suit in state court.  *See Seven Caesars, Inc. v. House*, No. A-4747-12T2, 2014 WL 4450441, at *7-8 (N.J. Super. Ct. App. Div. Sept. 11, 2014); Ex. 4.  These circumstances strongly suggest that Atlas affirmatively designed the assignment process to avoid federal court jurisdiction.  *See JMTR*, 42 F. Supp. 2d at 92-93 (concluding that the assignee-plaintiff "desperately want[ed] to litigate in state court" because it was incorporated shortly before it filed the lawsuit).

16.     ***Interest in the litigation.***  Atlas could not have had any interest in this litigation before the assignments.  Daniel's Law affords a cause of action only to "covered person[s]" and their "assignee[s]."  N.J. Stat. Ann. § 56:8-166.1(b).  Atlas is not a "covered person" under Daniel's

---

² The 144 companies that Atlas has sued are listed in five consolidation motions filed by Atlas on March 12, 2024 in *Atlas Data Privacy Corporation, et al. v. Pipl, Inc.*, Case No. MON-L-000481-24 (Monmouth County, NJ); *Atlas Data Privacy Corporation, et al. v. New Jersey Property Records, LLC*, Case No. MID-L-000811-24 (Middlesex County, NJ); *Atlas Data Privacy Corporation, et al. v. Melissa Data Corp.*, Case No. MRS-L-000224-24 (Morris County, NJ); *Atlas Data Privacy Corporation, et al. v. Enformion, LLC*, Case No. BER-L-000767-24 (Bergen County, NJ); *Atlas Data Privacy Corporation, et al. v. Whitepages, Inc.*, Case No. MER-L-000270-24 (Mercer County, NJ).

Law, which defines that term to include "an active, formerly active, or retired judicial officer, or law enforcement officer, or child protective investigator . . . or prosecutor[,] and any immediate family member residing in the same household as such judicial officer, law enforcement officer, child protective investigator . . . or prosecutor." *Id.* § 56:8-166.1(d). Therefore, the only reason that Atlas has any claimed interest in this litigation is because of the alleged assignments.

17. ***Timing of the assignments.*** On information and belief, the alleged assignments were executed shortly before this suit was filed. The prior version of Daniel's Law did not include an assignment provision. But in July 2023, certain amendments to Daniel's Law took effect that allowed "covered person[s]" to assign their claims arising under that law to an assignee. *See* 2023 N.J. Sess. Law Serv. Ch. 113. Therefore, the assignors could not have made the alleged assignments to Atlas until, at the absolute earliest, a few months before this lawsuit was filed in February 2024.

18. ***Partial assignment.*** Jurisdictional discovery has revealed that the assignments made to Atlas by the covered persons are only partial assignments and that the covered persons retain a 65% financial interest in the assigned claims.

19. These facts give rise to a strong inference that the purpose of the assignments was to avoid federal jurisdiction, as has been confirmed by findings from jurisdictional discovery ordered by the Court. If the assignments are disregarded, Atlas lacks any cognizable claim. The action then is removable on three alternative grounds. First, the complaint can be construed as a class action, seeking relief on behalf of thousands of unnamed covered persons—and therefore would be removable under CAFA. Second, the complaint can be construed as a mass action under CAFA. Third, the complaint can be construed as asserting only the claims of the Individual Plaintiffs, in which case it is removable based on the general diversity jurisdiction statute.

## III. THE COURT HAS JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

### A. The Court Should Construe This Case As A Class Action

20. Under CAFA, "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]" 28 U.S.C. § 1332(d)(1)(B).

21. On information and belief, Atlas purposefully did not bring this case under New Jersey's Rule 23 analogue in order to avoid federal jurisdiction. But that pleading tactic is not dispositive: If courts "interpreted 'any civil action filed under Rule 23' or a state-law analogue to refer only to cases that specifically mention Rule 23 or a state-law analogue," then "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds." *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017). "[A]llowing class-action plaintiffs to avoid federal jurisdiction simply by omitting explicit reference to the class-action rule they intend to proceed under would promote the kind of procedural gaming CAFA was enacted to prevent." *Id.* To that end, Congress explained that CAFA's definition of "class action" should be "interpreted liberally" and that CAFA's "application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority." S. Rep. No. 109–14, at 35 (2005). Rather, all "lawsuits that resemble a purported class action should be considered class actions" under CAFA. *Id.*

22. Once Atlas is disregarded, it is clear that the only way this case could proceed with respect to the claims of the non-party covered persons would be to construe the complaint as alleging a class action in which the Individual Plaintiffs serve as class representatives. The

8

complaint purports to be brought on behalf of thousands of unnamed "covered persons." Compl. ¶ 25. It alleges facts "common" to all claims. *Id.* ¶¶ 43-55. It "seeks to enforce compliance with Daniel's Law for those Covered Persons" (*id.* ¶ 35) by requesting injunctions (1) ordering Spokeo to remove their personal information from its platform and (2) appointing a "qualified independent expert to ensure that [Spokeo] prospectively maintain[s] compliance with Daniel's Law" (*id.*, Prayer for Relief). It also requests damages on behalf of the covered persons, including compensatory damages, punitive damages, and attorney's fees. *Id.* Put another way, although this case is not labeled as a class action, the claims seek to enforce the rights of thousands of covered persons—*i.e.*, the absent class members. This is exactly the type of action that Congress intended to be removable, and the Court should construe this case as a class action for purposes of determining jurisdiction.

### 1. CAFA's Class Action Jurisdictional Requirements Are Satisfied

23. CAFA sets forth three requirements to invoke federal jurisdiction: (1) a class action comprising 100 or more members, (2) in which any member of a class of plaintiffs is a citizen of a state from any defendant, and (3) in which the amount in controversy exceeds $5 million. *Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 503 (3d Cir. 2013) (citing 28 U.S.C. § 1332(d)(2), (d)(2)(A), (d)(5)(B)). Each requirement is satisfied here.

#### a. This Case Comprises At Least 100 Members

24. This case involves the claims of 18,889 plaintiffs and assignors, which exceeds the jurisdictional minimum of 100. *See Vodenichar*, 733 F.3d at 503.

#### b. Minimal Diversity Exists Pursuant To 28 U.S.C. § 1332(d)(2)(A)

25. Spokeo is a citizen of Delaware and its principal place of business is in California. The complaint does not allege the identities or citizenships of the assignors. It also does not allege the citizenships of the Individual Plaintiffs. However, Plaintiffs allege that Plaintiff Scott Maloney

lives and works in New Jersey. Compl. ¶ 18. On information and belief, Plaintiff Maloney is a citizen of New Jersey. *See Juvelis v. Snider*, 68 F.3d 648, 654 (3d Cir. 1995) ("Persuasive evidence" of citizenship includes "establishment of a home, place of employment . . . and civic life in a jurisdiction." (citation omitted)).

26. Accordingly, minimal diversity exists because at least one of the Individual Plaintiffs is a citizen of a different state than Spokeo. *See* 28 U.S.C. § 1332(d)(2)(A).

### c. The Amount In Controversy Exceeds $5,000,000

27. Under CAFA, individual claims are aggregated to determine whether the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2), (d)(6). A party removing under CAFA need only show that there appears to be a "reasonable probability" that the value of the aggregate claims asserted exceeds $5 million. *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 508 (3d Cir. 2014).

28. While Spokeo denies the claims alleged in Plaintiffs' complaint and further denies that Plaintiffs are entitled to any monetary or other relief, the amount in controversy here satisfies the jurisdictional threshold. Plaintiffs seek statutory damages and actual damages of more than $18,889,000, which is well in excess of the $5 million threshold.

### B. The Court Should Construe This Case As A Mass Action

29. In addition, Spokeo files this Amended Notice of Removal to assert an additional ground for removal—that this case should be construed as a "mass action" under CAFA. Plaintiffs have already addressed this ground for removal in their motion to remand and therefore will suffer no prejudice from this amendment. *See* Dkt. 38-1 at 26-30. In any event, Plaintiffs' counsel waived any objection to the timeliness of amended notices of removal during the May 7, 2024 conference before the Court. *See* Dkt. 42 (Hr'g Tr.) at 53:18-55:1.

30. CAFA allows federal courts to exercise jurisdiction over "mass actions," defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," 28 U.S.C. § 1332(d)(11)(B)(i), where certain requirements are satisfied. Specifically, jurisdiction over such actions is proper if: (1) any plaintiff is a citizen of a state different from any defendant (i.e., minimal diversity exists), and (2) the amount in controversy exceeds $5 million in the aggregate and $75,000 for individual plaintiffs. 28 U.S.C. §§ 1332(d)(2), (d)(6), (d)(11)(B)(i). These requirements are satisfied here.

### 1.    This Case Involves The Claims Of 100 Or More Persons

31. Under CAFA, "the term 'mass action' means any civil action . . . in which *monetary relief claims of 100 or more persons* are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact[.]" 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

32. The "question is not whether 100 or more plaintiffs answer a roll call in court, but whether the '*claims*' advanced by 100 or more persons are proposed to be tried jointly." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added). "Where a single complaint joins more than *100 separate claims* involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 329 (3d Cir. 2017) (emphasis added).

33. Here, Atlas alleges that it is the assignee of monetary relief claims of approximately 18,882 covered persons—well in excess of the 100-claim threshold—but purports to assert them collectively in the Complaint. *See* Compl. ¶ 25. But Atlas is only a *partial* assignee of the claims

11

being asserted on behalf of these individuals—meaning that each of the assignors retain an interest in individual "monetary relief claims" being asserted in the action.

34. Further, in the context of evaluating whether a putative class meets Rule 23's numerosity requirement, the Third Circuit has held that assignors of partial interests in claims "can be counted as class members." *In re Modafinil Antitrust Litig.,* 837 F.3d 238, 251-52 (3d Cir. 2016), *as amended* (3d Cir. Sept. 29, 2016) (in the context of partial assignments, both the assignors and assignees are appropriately considered to be members of the class). Similarly here, in determining the number of "monetary relief claims" being asserted in this action, the Court should consider the 18,882 individuals holding interests in individual claims for relief under Daniel's Law.

35. That Atlas did not name each of the assignors in the case caption does not change the fact that Atlas is only entitled to bring each claim alleged in the Complaint as the assignee for a corresponding and specific assignor, each of whom retains an interest in the claims being asserted in this litigation.

36. Thus, because Atlas is suing to recover for the "monetary relief claims of 100 or more persons" in a single lawsuit, 28 U.S.C. § 1332(d)(11)(B)(i), the mass-action numerosity element is satisfied.

    **2. Minimal Diversity Exists Pursuant To 28 U.S.C. § 1332(d)(2)(A)**

37. Minimal diversity exists for the reasons explained above. *See supra* Section III.A.1.b.

    **3. The Alleged Individual Amount In Controversy Exceeds $5 Million In The Aggregate And $75,000 For Each Claimant**

38. CAFA provides that, "[i]n any class [or mass] action, the claims of the individual class members [or plaintiffs] shall be aggregated to determine whether the matter in controversy

exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(6), (d)(11)(A). In the case of mass actions (as opposed to traditional class actions), there is an additional requirement that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]," which requires that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(d)(11)(B)(i). In other words, CAFA confers federal jurisdiction over a mass action where the aggregate amount in controversy exceeds $5 million, and over individual plaintiffs participating in that mass action where their individual amount in controversy exceeds $75,000.

39. As stated above, Spokeo denies the validity and merit of Plaintiffs' claims. Nevertheless, for purposes of setting forth grounds for this Court's jurisdiction—and without conceding that Plaintiffs are entitled to damages or any relief whatsoever—it is apparent that both amount-in-controversy requirements for CAFA mass action removal are met here.

40. As to the aggregate amount in controversy, the $5,000,000 threshold is satisfied by the complaint's request for statutory damages under Daniel's Law. As explained above, Plaintiffs seek statutory damages and actual damages of more than $18,889,000, which is well in excess of the $5 million threshold. *See supra* Section III.A.1.c.

41. And as to the "individual" amount in controversy, as explained below, the possible damages for each of the Individual Plaintiffs and covered persons readily exceeds $75,000. *See infra* Section IV.B. Adding together potential statutory, actual, and punitive damages that the complaint seeks, as well as the putative value of injunctive relief and attorneys' fees, the individual jurisdictional threshold has been met. *See id.*

## IV. IN THE ALTERNATIVE, THE COURT HAS JURISDICTION PURSUANT TO 28 U.S.C. § 1332(a)

42. In the alternative, if the complaint with Atlas disregarded were construed to assert only the Individual Plaintiffs' claims, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Section 1332(a) vests federal courts with original jurisdiction over actions where (1) the parties are citizens of different states and (2) the amount in controversy exceeds $75,000. Each requirement is satisfied here.

### A. Complete Diversity Exists

43. For diversity jurisdiction to exist, there must be "complete" diversity: All plaintiffs must have a different citizenship from all defendants. *Lincoln Ben. Life Co.*, 800 F.3d at 104.

44. As noted above, Spokeo is a citizen of California and Delaware. And although Atlas is also a citizen of Delaware, the Court should disregard its citizenship because the assignments were collusively made to avoid federal jurisdiction.

45. As for the Individual Plaintiffs, each currently works as a law enforcement officer in New Jersey. Compl. ¶¶ 15-18, 22-23. Under New Jersey law, "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position." N.J. Stat. Ann. § 40A:14-122.8. And residency is defined as "the state (1) where the person spends the majority of the person's nonworking time, and (2) which is most clearly the center of the person's domestic life, and (3) which is designated as the person's legal address and legal residence for voting." N.J. Stat. Ann. § 52:14-7a. Accordingly, the Individual Plaintiffs likewise are citizens of New Jersey. *Frett-Smith v. Vanterpool*, 511 F.3d 396, 401 (3d Cir. 2008) (defining citizenship as "a party's physical presence in a state with an intent to remain there indefinitely").

14

### B.     The Amount In Controversy Exceeds $75,000

46.     The second requirement of traditional diversity of citizenship jurisdiction is that the amount in controversy must exceed $75,000.  *See* 28 U.S.C. § 1332(a).  When "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy." *Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3rd Cir. 2020) (quoting *Dart Cherokee Basin Operating Co. LLC v. Owens*, 574 U.S. 81, 89 (2014)).  If a single plaintiff satisfies the amount-in-controversy requirement, the Court can exercise supplemental jurisdiction over the remaining plaintiffs pursuant to 28 U.S.C. § 1367, regardless of the value of their claims.  *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549 (2005).

47.     Here, the Plaintiffs seek: (1) "actual damages, not less than the liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (2) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (3) "reasonable attorneys' fees," and (4) "injunctive relief."  Compl., Prayer for Relief.  Taken together, each Plaintiff easily satisfies the amount-in-controversy requirement.

#### 1.     Actual/Statutory Damages

48.     Daniel's Law states that a court may award "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act[.]"  N.J. Stat. Ann. § 56:8-166.1(c)(1).

49.     Here, the complaint can plausibly be read to assert that multiple violations of Daniel's Law have occurred for each Plaintiff.  Plaintiffs allege that a violation occurred due to disclosure of each covered person's (1) home address and (2) unpublished home telephone numbers.  Compl. ¶ 57.  Plaintiffs also allege that violations occurred through three types of

15

disclosure: (1) disclosure on the internet, (2) re-disclosure on the internet, and (3) otherwise making available protected information. *Id.* ¶ 28. Although Spokeo will vigorously contest Plaintiffs' interpretation of Daniel's Law, they allege that each violation "constitute[s] a separate violation under the law." Compl. ¶ 60.

50. In addition, Plaintiffs will likely argue they suffered actual damages that exceed $1,000. The Individual Plaintiffs allege that threats caused them to relocate their family homes (Compl. ¶ 17), install camera systems and security alarms (*id.* ¶ 22), and train their family members on how to respond to attacks (*id.*). To the extent Plaintiffs intend to allege that these are actual damages attributable to violations of Daniel's Law, they are placing at issue claims that exceed the statutory minimum of $1,000 and potentially amount to tens of thousands of dollars.

### 2. Punitive Damages

51. Daniel's Law states that the Court may award "punitive damages upon proof of willful or reckless disregard of the law[.]" N.J. Stat. Ann. § 56:8-166.1(c)(2). Plaintiffs ask the Court to award such damages for "willful noncompliance." Compl., Prayer for Relief.

52. The Third Circuit has held that claims for punitive damages made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3rd Cir. 2008); *see Quinones-Velazquez v. Maroulis*, 677 F. App'x 801, 804 (3rd Cir. 2017). Accordingly, Plaintiffs' request for punitive damages by itself is sufficient to satisfy the amount in controversy.

### 3. Attorney's Fees

53. Daniel's Law states that a court may award "reasonable attorney's fees." N.J. Stat. Ann. § 56:8-166.1(c)(3). Courts in the Third Circuit typically calculate attorney's fees at 30

percent of the compensatory and/or punitive damages in determining the amount in controversy. *See, e.g.*, *Ciccone v. Progressive Specialty Ins. Co.*, 2020 WL 7319777, at *4 (M.D. Pa. Dec. 11, 2020); *Rodriguez v. Burlington County Corrections Dept.*, 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) ("The Third Circuit has noted that attorney's fees can be estimated to be as high as 30% of the final judgment.").

### 4.     Injunctive Relief

54.     Finally, Daniel's Law states that a court may award "any other preliminary and equitable relief as the court determines to be appropriate." N.J. Stat. Ann. § 56:8-166.1(c)(4). Plaintiffs ask the Court to enter an injunction requiring Spokeo to comply with Daniel's Law and appoint an "independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law." Compl., Prayer for Relief.

55.     When a plaintiff in a diversity case seeks injunctive relief, the amount in controversy is determined by "the value of the object of the litigation." *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3rd Cir. 1995). In addressing the value of requested injunctive relief, courts in the Third Circuit focus on the value to the plaintiff. *See USAA Casualty Ins. Co. v. CIT Bank*, 2018 WL 3213324, at *4 (D.N.J. May 15, 2018).

56.     Here, Plaintiffs allege that the presence of their protected information on Spokeo's website exposes them to harassment, violence, and potentially even murder. Compl. ¶¶ 7, 13-14. In other words, the value of the injunctive relief sought is each Plaintiff's interest in safety and security. Although the monetary value of that interest is difficult to quantify, courts in the Third Circuit have held that injunctive relief that is intended to promote "the public interest in safety" should be included in determining whether the jurisdictional threshold is satisfied. *Tex. E. Transmission Corp. v. Giannaris*, 818 F. Supp. 755, 759 (M.D. Pa. 1993).

\*   \*   \*

57. In sum, Spokeo has plausibly alleged that the parties are completely diverse. And taken together, the compensatory damages, punitive damages, attorney's fees, and injunctive relief leave no room for doubt that the amount-in-controversy requirement is satisfied as to each Plaintiff. But even if the amount in controversy is satisfied only as to a single Plaintiff, the Court may exercise supplemental jurisdiction over the remaining Plaintiffs. The requirements for diversity jurisdiction are satisfied.

## V. OTHER STATUTORY REQUIREMENTS FOR REMOVAL ARE SATISFIED

58. Plaintiffs filed this action in the Superior Court of New Jersey Law Division, Morris County. Venue is proper in the United States District Court for the District of New Jersey because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

59. As required by 28 U.S.C. § 1446(a), copies of all process and pleadings served upon Spokeo are attached as exhibits hereto.

60. Spokeo timely filed its original Notice of Removal on March 27, 2024. *See* 28 U.S.C. § 1446(b)(1). This Amended Notice of Removal is timely because Plaintiffs' counsel waived any objection to the timeliness of amended notices of removal during the May 7, 2024 conference with the Court. *See* Dkt. 42 (Hr'g Tr.) at 53:18-55:1.

61. As required by 28 U.S.C. § 1446(d), Spokeo will promptly file a copy of this Amended Notice of Removal with the Superior Court of New Jersey Law Division, Morris County, and serve copies of the same on all parties to this action.

WHEREFORE, Spokeo respectfully removes this action from the Superior Court of New Jersey Law Division, Morris County, docketed at No. MRS-L-000227-24, to this Court.

DATED:  September 5, 2024

Respectfully submitted,

/s/ *Joshua N. Howley*

Joshua N. Howley
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
jhowley@sillscummis.com

Andrew J. Pincus
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

John Nadolenco
Daniel D. Queen
MAYER BROWN LLP
333 S Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

Benjamin D. Bright
Jonathan D. Stahl
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com

*Attorneys for Defendant Spokeo, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 5, 2024, the foregoing Amended Notice of Removal and attachments thereto were electronically filed with the Clerk of Court using the CM/ECF system. The undersigned certifies that all counsel of record are CM/ECF users and that service will be accomplished by the CM/ECF system.

The undersigned further certifies that on September 5, 2024, the foregoing Amended Notice of Removal and attachments thereto were electronically filed with the Clerk of the Superior Court of New Jersey Law Division, Morris County.

/s/ *Joshua N. Howley*
Joshua N. Howley